UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ANDREA ANN RODRIGUEZ, § § *Plaintiff*, § § v. § § CHILDREN'S ALLIANCE OF SOUTH § TEXAS, MIKEY BETANCOURT, AND § JOEL RODRIGUEZ, JR., § § *Defendants*. § § | Civil Action No. SA-17-CV-599-XR |

## ORDER

On this date, the Court considered the status of the above-captioned case. After careful consideration, the Court DENIES Defendants' Motion to Dismiss. Docket no. 45.

## BACKGROUND

Plaintiff brought this action on July 7, 2017, naming as Defendants Children's Alliance of South Texas ("Alliance"), Mikey Betancourt, and Joel Rodriguez, Jr. Docket no. 1. On November 15, 2017, Plaintiff filed her Amended Complaint, adding Thelma Trevino and Miguel Rodriguez as Defendants. Docket no. 39. Plaintiff seeks damages to remedy alleged violations of her First, Fifth, and Fourteenth Amendment rights. *Id.* at 1.

Plaintiff was employed by Alliance on November 14, 2015, as a therapist. *Id.* at 3. Plaintiff states that Alliance is a "quasi-governmental entity" that provides children services. *Id.* at 2. Plaintiff alleges she was given periodic employee evaluations, at which she excelled. *Id.* at 4. She alleges her last evaluation was on June 14, 2016, and her Overall Performance Rating Assigned was "Above Ave," *i.e.*, above average. *Id.*

1

Plaintiff alleges she received an employee handbook that included in its "Rules of Conduct" that "Employees may engage in partisan political activities during their off-duty hours." *Id.* Plaintiff states that on or about June 19-20, 2016, her local newspaper published a story about a police dog named "Ledger" that died after it was left in a running police car for about seven hours at the La Salle County courthouse. *Id.* The dog's death was allegedly investigated; it was determined there was "no foul play," and the officer that allegedly left the dog in the car was not charged and continued to work as a deputy. *Id.* Plaintiff alleges the story received a lot of attention and "caused a lot of people to comment about it since it was a matter of public concern." *Id.*

Plaintiff alleges that during her off-duty hours she commented on her Facebook page about the dog's death and investigation, which is available to her friends, colleagues, and the general public. *Id.* Plaintiff states that her specific comment read as follows:

> I am so sad that officials that I trusted so much have chosen to handle Officer Ledger's death in such a disrespectful way. It is my opinion that these officials have total disregard for life and for their OWN.
>
> God sees all. I still believe that there is criminal negligence involved and there is no one to help and those with the power to help have looked the other way. I cannot mention names, because I am related to one of them. There are other officials that have not stepped up to the plate. They are laying low on this issue because they are up for election. Where is the District Attorney on this, other judges....?
>
> Ledger was not just a dog found on a street and trained by Gonzalez. Ledger belonged to and belongs to the taxpayers. He cost us thousands of tax dollars. As residents of this county we have the right to have our questions answered.
>
> Ledger deserves to be represented by an attorney that we have elected at least to look at all of the evidence and not adhere to the "Good O'le Boy" system. Ledger deserves to be exhumed and buried at the cemetery like any other fallen officer with his murderer behind bars.

> Cotulla has always been its own State and Government. It has never been about the people of the county. It has been about the very Officials that run it. The rich get richer and poor get poorer.
>
> The behaviors that have been exhibited are pathological and sociopathic. The Narcissists that run our government do not care about human beings, much less a "dog" that would give his life unconditionally for his partner.
>
> This is only an opinion, I am being harsh with those officials because they deserve it.
>
> May God Bless Cotulla

*Id.* at 5–6.

Plaintiff alleges that Defendants were outraged at her post. *Id.* at 6. Plaintiff alleges that within days of her post, Joel Rodriguez, Jr., a La Salle County Judge, contacted Betancourt, the executive director of Alliance, and demanded that Plaintiff post and retract her Facebook comments. *Id.* Plaintiff states she followed their demands to protect her job, despite the fact that she "exercised her rights under the law to comment on a matter of public concern and consistent with the personnel policies that governed her conduct" as an Alliance employee. *Id.* Plaintiff alleges that Defendants were not satisfied with her first retraction and demanded that she revise her apology. *Id.* Plaintiff states she prepared two versions and asked Defendants which of the two were satisfactory, to which Betancourt allegedly responded, "Either response is good." *Id.*

Plaintiff alleges that Defendants, to retaliate against her for speaking out on a matter of public concern, conspired and agreed among themselves to cause harm to Plaintiff by having her discharged from her employment by any means necessary. *Id.* Plaintiff alleges that County Treasurer Trevino conspired with Joel Rodriguez, Jr. and County Sheriff Miguel Rodriguez to pull funding from Alliance if Betancourt did not terminate Plaintiff. *Id.* Plaintiff alleges Betancourt acted in the course and scope of his employment as executive director of Alliance

and deprived her of her right to free speech. *Id.* Plaintiff alleges Betancourt retaliated against her by terminating her employment because she exercised her right to free speech. *Id.* Plaintiff alleges that at the time of her employment, the individual Defendants acted under color of the laws and regulations of the State of Texas and the County of La Salle. *Id.* at 7.

Plaintiff brings a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against Betancourt in his individual and official capacity, Joel Rodriguez, Jr. in his individual capacity, Trevino in her individual capacity, and Miguel Rodriguez in his individual capacity. *Id.* Plaintiff brings a conspiracy claim against all Defendants. *Id.* at 7–8. On December 8, 2017, individual Defendants Joel Rodriguez, Jr., Trevino, and Miguel Rodriguez filed their motion to dismiss, now pending before the Court. Docket no. 45.

## DISCUSSION

### I. Legal Standard

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

4

## II. Application

Defendants argue that Joel Rodriguez, Jr., Trevino, and Miguel Rodriguez are entitled to qualified immunity with respect to Plaintiff's First Amendment retaliation claims brought pursuant to § 1983. Defendants further argue that Plaintiff fails to state a claim for First Amendment retaliation and conspiracy against these Defendants.

### A. First Amendment Retaliation Claims

Plaintiff brings claims for First Amendment retaliation pursuant to § 1983 against the individual Defendants. To state a § 1983 claim, a plaintiff must state a violation of a right secured by the Constitution or laws of the United States and demonstrate that the deprivation was committed by a person acting under color of state law. *Randolph v. Cervantes*, 130 F.3d 727, 730 (5th Cir. 1997). A person acts under color of state law if one engages in the "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law . . . ." *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (quoting *United States v. Causey*, 185 F.3d 407, 415 (5th Cir. 1999)). A state officer, however, does not act under color of state law if he "pursues personal objectives without using or misusing the power granted to him by the state to achieve the personal aim." *Id.* (quoting *Harris v. Rhodes*, 94 F.3d 196, 197 (5th Cir. 1996)). Plaintiff brings her § 1983 claims against Joel Rodriguez, Jr., Trevino, and Miguel Rodriguez as state actors who hold the positions of County Judge, County Treasurer, and Sheriff, respectively.

#### 1. Defendants' Qualified Immunity Defense

Defendants argue that Plaintiff's First Amendment retaliation claim should be dismissed by raising the defense of qualified immunity. "Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." After a defendant asserts

5

qualified immunity as a defense, the burden is on the plaintiff to negate qualified immunity. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). To overcome qualified immunity, a plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011)). Regarding the second prong, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).

The Fifth Circuit has stated that "[o]ur precedents, at minimum, cast uncertainty on the proposition that an individual must be the actual 'final decision maker' to be held liable in an individual capacity for a First Amendment retaliation." *Howell v. Town of Ball*, 827 F.3d 515, 526 (5th Cir. 2016), *cert. denied sub nom. Town of Ball, La. v. Howell*, 137 S. Ct. 815 (2017); *see Culbertson v. Lykos*, 790 F.3d 608, 627 (5th Cir. 2015) (noting the "ambiguity as to the liability of a person for recommending an adverse employment decision" and finding it unsettled "whether someone who is not a final decision-maker and makes a recommendation that leads to the plaintiff being harmed can be liable for retaliation under Section 1983"). Plaintiff does not allege that Joel Rodriguez, Jr., Trevino, and Miguel Rodriguez were final decision-makers with respect to her termination; she only alleges that Betancourt terminated her employment. Docket no. 39 at 6.

Plaintiff, however, points to the Fifth Circuit's decision in *Depree v. Sanders* to support her argument that a non-final decision-maker can be held liable for First Amendment retaliation under § 1983. In *Depree*, the Court restated that "only final decision-makers may be held liable

6

for First Amendment retaliation employment discrimination under § 1983." *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009) (quoting *Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004)). The Court then discussed the "cat's paw" theory, noting prior case law that held if a person conducting a final review is the "cat's paw" of those acting from retaliatory motives, "the causal link between the protected activity and adverse employment action remains intact." *Id.* (quoting *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002)). To prevail on the "cat's paw" theory for a non-final decision-maker, the Court stated the plaintiff must "submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited [retaliatory] animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decisionmaker." *Id.* (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004)). Although the Court found this plaintiff provided no evidence that the non-final decision-makers exerted influence over the final decision-maker in a way that co-opted the final decision, the Court recognized prior Fifth Circuit law that a non-final decision-maker can be held liable for First Amendment retaliation under a "cat's paw" theory, and the Court considered the evidence presented under such a theory. *Id.* at 288–89.

Although the Fifth Circuit consistently states that only final decision-makers can be held liable for First Amendment retaliation, this Court is aware of no case law that upsets the holding in *Gee v. Principi* that a non-final decision-maker can also be held liable for acting as a functional final decision-maker by creating a "cat's paw" scenario. For example, in *Pennypacker v. City of Pearl, Mississippi*, the most recent Fifth Circuit case to which Defendants cite, the Fifth Circuit again found that it was not clearly established whether individual defendants who were not final decision-makers could be held personally liable for First Amendment retaliation under § 1983, but the Court reached that conclusion specifically because the plaintiffs conceded

7

that the individual defendants were not final decision-makers responsible for their termination. Plaintiffs did not assert a "cat's paw" theory, and the Court did not address it. Also, in *Culbertson*, the Court found the law unsettled when it came to non-final decision-makers offering recommendations that lead to a plaintiff's harm; the Court did not address a "cat's paw" situation. *Culbertson*, 790 F.3d at 627.

The question of whether a final decision-maker served as the "cat's paw" is a question of fact and should not be disposed of at the motion to dismiss stage. Accordingly, the Court finds that it was settled law that a non-final decision-maker can be held liable for First Amendment retaliation when Plaintiff alleges that the final decision-maker was the "cat's paw" of non-final decision-makers. The individual Defendants are not entitled to qualified immunity at this time for Plaintiff's First Amendment retaliation claim under § 1983.

2. **Defendants' Argument on Plaintiff's Failure to State a Claim**

Defendants also argue that Plaintiff fails to sufficiently state a claim for First Amendment retaliation under § 1983. Defendants argue that Plaintiff fails to meet her heightened pleading burden for a § 1983 claim brought against public officials in their individual capacities.

When a public official is sued under § 1983, a plaintiff must allege "specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). For Rule 12(b)(6) purposes, this heightened pleading framework does not alter the Court's acceptance of a plaintiff's allegations as true, but it does demand specific facts and not merely conclusions.

Defendants argue that Plaintiff fails to allege specific facts that describe unconstitutional conduct by the individual Defendants. Plaintiff, however, does state specific conduct that goes beyond mere conclusory allegations. Plaintiff alleges that Defendants were outraged about her

Facebook post, Joel Rodriguez, Jr. contacted Betancourt and demanded that Plaintiff retract her post, Defendants were not satisfied with Plaintiff's first retraction and demanded she revise the apology, and Trevino conspired with Joel Rodriguez, Jr. and Miguel Rodriguez to pull funding from Alliance if Betancourt did not terminate Plaintiff. Docket no. 39 at 6. At this stage, Plaintiff sufficiently alleges specific conduct and actions that give rise to an alleged constitutional violation by the individual Defendants.

### B. Conspiracy Claims

Plaintiff brings conspiracy claims against the individual Defendants, alleging that Alliance knowingly and willfully conspired and agreed with the individual Defendants to terminate Plaintiff's employment because she engaged in free speech to comment on a matter of public concern. Defendants argue that Plaintiff fails to establish the possibility of an agreement between private and public defendants.

To allege a civil conspiracy under § 1983, a plaintiff must establish "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). As Defendants point out, Plaintiff brings her claims as though the individual Defendants were state actors, despite the fact that she brings claims against them in their individual capacity. Plaintiff is not required to show an agreement between public and private actors, as Defendants argue. Plaintiff must only allege that there is a conspiracy involving state action, and that she was deprived of her First Amendment rights in furtherance of that conspiracy by a party to the conspiracy.

Plaintiff sufficiently alleges that there was state action by Alliance, which she alleges is a quasi-governmental entity; Betancourt, the director of Alliance; and Joel Rodriguez, Jr., Trevino,

and Miguel Rodriguez, all of whom are public officials. A plaintiff cannot establish that a conspiracy occurred by only alleging conclusory allegations with no factual support. *Hicks v. Bexar Cty., Tex.*, 973 F. Supp. 653, 676 (W.D. Tex. 1997) *aff'd sub nom. Hicks v. Bexar Cty.*, 137 F.3d 1352 (5th Cir. 1998) ("Conclusory allegations of conspiracy in a Section 1983 lawsuit are insufficient, absent reference to material facts . . ."). Here, Plaintiff sufficiently alleges material facts of a conspiracy by stating that Rodriguez, Jr. contacted Betancourt and demanded Plaintiff retract her Facebook post. Plaintiff further alleges that after Defendants were dissatisfied with her apology, Trevino conspired with Joel Rodriguez, Jr. and Miguel Rodriguez to pull funding from Alliance if Betancourt did not terminate Plaintiff. At this stage, Plaintiff states a valid claim for civil conspiracy under § 1983.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Docket no. 45) is hereby DENIED.

It is so ORDERED.

SIGNED this 23rd day of January, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE